GERALD HILL *vs*. SUPERINTENDENT, MASSACHUSETTS
CORRECTIONAL INSTITUTION, WALPOLE
(and a companion case[1]).

Norfolk. December 5, 1983. — June 19, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & O'CONNOR, JJ.

*Imprisonment. Due Process of Law*, Prison disciplinary proceeding.

A prison inmate who had been subjected to forfeiture of statutory good-time
credits as punishment for misconduct within a correctional institution
was entitled to judicial review of the sufficiency of the evidence before
the prison disciplinary board to warrant the board's findings. [200-203]

Evidence before a prison disciplinary board tending to show merely that two
inmates, together with an unidentified third inmate, were the only inmates
seen by a guard in an enclosed area where another inmate had been
beaten, and that the two fled when a guard appeared, was insufficient
to support the board's finding that they were involved in the assault.
[203-204]

CIVIL ACTIONS commenced in the Superior Court Department
on June 9, 1982.

The cases were heard by *Zobel*, J., on motions for summary
judgment.

After review was sought in the Appeals Court, the Supreme
Judicial Court ordered direct appellate review on its own initia-
tive.

*Jamie Ann Sabino* for Joseph Crawford.

*Martin E. Levin*, Assistant Attorney General, for the defend-
ant.

O'CONNOR, J. While incarcerated at the Massachusetts Cor-
rectional Institution at Walpole (M.C.I., Walpole), the plain-
tiffs, Gerald Hill and Joseph Crawford, filed pro se *complaints*

---

[1] Joseph Crawford *vs*. Superintendent, Massachusetts Correctional Institu-
tion, Walpole.

in the Superior Court claiming that the evidence presented at a prison disciplinary board hearing was constitutionally inadequate to warrant the board's determination that the plaintiffs had been involved in an assault on another inmate in violation of prison rules.[2] In the Superior Court, they sought restoration of the 100 days of good time credits which the board had taken from them as punishment for their involvement in the assault, and they sought expungement from their prison records of all reference to the incident. After filing an answer in each case, the defendant superintendent of M.C.I., Walpole, moved in each case for summary judgment. A judge of the Superior Court ruled that the board's findings were not adequately supported by the evidence and denied the superintendent's motions for summary judgment. The judge ordered the entry of judgments for the plaintiffs vacating the board's findings, nullifying the sanctions that had been imposed, and restoring the plaintiffs' good time credits. The superintendent appealed in each case, arguing that (1) the judge erred in reviewing the board's findings for the sufficiency of the evidence because there is no constitutional right to judicial review of a disciplinary board's findings;[3] and (2) even if such a right exists, the judge erred in holding that there was insufficient evidence in these cases to warrant the board's findings. After entry of the appeals in the Appeals Court, we transferred the appeals to this court on our own motion. We hold that there was no error. We affirm the judgments of the Superior Court.

---

[2] The complaints are entitled "writ of habeas corpus ad testificandum." The defendant does not challenge the form of the complaints. The actions should have been brought as civil actions in the nature of certiorari pursuant to G. L. c. 249, § 4. See *Boston Edison Co.* v. *Selectmen of Concord,* 355 Mass. 79, 83 (1968); *Cepulonis* v. *Commissioner of Correction,* 15 Mass. App. Ct. 292 (1983).

The plaintiffs' arguments are based solely on the United States Constitution. They make no claims under the Massachusetts Constitution, nor do they rely on any rules and regulations promulgated by the Department of Correction as supporting their right to judicial review of the adequacy of the evidence to warrant the disciplinary board's findings.

[3] There is no statutory right of review. Decisions of the Department of Correction are not reviewable under G. L. c. 30A, § 14. See G. L. c. 30A, §§ 1, 1A.

The plaintiffs were charged in disciplinary reports with assaulting another inmate in violation of prison rules.[4] The disciplinary board held a separate hearing on the charges against each plaintiff. At each hearing, some exculpatory evidence was introduced. The board relied on other evidence, however, for its determinations that the plaintiffs had participated in an assault. That evidence consisted of testimony of Sergeant Maguire, who was a prison guard, and his written disciplinary report. The report presented in each case stated that on May 2, 1982, Maguire heard an inmate twice say loudly, "What's going on?" He saw some commotion close to the other side of a door that had a window through which he had been looking. According to the report, Maguire quickly investigated and found an inmate bleeding from his mouth and suffering from a swollen eye. Dirt was strewn about the area, which was enclosed by a chain link fence. There were only three inmates other than the victim in the area at this time, and they were jogging away. Two of them were the plaintiffs. From these observations, Maguire concluded that "one or more of these inmates did assault [the victim] and apparently acted as a group as they were all jogging away from the scene together." Maguire's testimony at each hearing was substantially in accord with his report. We turn now to the merits of these appeals.

The rights and privileges that citizens ordinarily enjoy are necessarily diminished with respect to prison inmates, but an inmate is "not wholly stripped of constitutional protections." *Wolff* v. *McDonnell,* 418 U.S. 539, 555 (1974). In *Wolff,* the Supreme Court held that procedural due process requires that

---

[4] The plaintiffs were charged with the following disciplinary offenses which are found in 103 Code Mass. Regs. § 430.22 (18), (19), and (31) (1978):

"(18) Fighting with, assaulting or threatening another person with any offense against his person or property.

"(19) Use of obscene, abusive, or threatening language, action or gesture to any inmate or staff member.

"(31) Attempting to commit any of the above offenses, aiding another person to commit any of the above offenses, making plans to commit any of the above offenses, shall be considered the same as commission of the offense itself."

before an inmate can be deprived of a State-created liberty interest, he must be given advance written notice of the claimed violation, an opportunity to call witnesses and present evidence in the absence of undue hazard to institutional safety or correctional goals, and a written statement of the evidence relied on by the fact-finder and the reasons for any disciplinary action taken. *Id.* at 563-567. "Massachusetts provides that every prisoner 'whose record of conduct shows that he has faithfully observed all the rules of his place of confinement' has a statutory right to have 'the term of his imprisonment reduced by a deduction' of a determined period of time from his sentence. G. L. c. 127, §§ 129, 129C & 129D. Such good time credits may be forfeited '[i]f a prisoner violates any rule of his place of confinement.' G. L. c. 127, § 129, first par. The loss of such statutory good time credits affects a State-created liberty interest protected by the due process guarantees of the United States Constitution." *Nelson* v. *Commissioner of Correction,* 390 Mass. 379, 389 (1983).

The Supreme Court in *Wolff* was not required to rule, nor did it do so, on whether an inmate who is deprived of a State-created liberty interest by a disciplinary board is constitutionally entitled to judicial review of the sufficiency of the evidence to warrant the board's findings. However, such an entitlement logically follows from the court's holding with respect to the requirements of procedural due process, together with its reasoning that "a written record helps to insure that administrators, faced with possible scrutiny by state officials and the public, *and perhaps even the courts,* where fundamental constitutional rights may have been abridged, will act fairly" (emphasis added). *Wolff* v. *McDonnell, supra* at 565.

Since "[t]he touchstone of due process is protection of the individual against arbitrary action," *id.* at 558, we conclude that before a prison inmate can be deprived of good time credits, in which he has a State-created liberty interest protected by due process guarantees of the United States Constitution, he is entitled not only to the procedural due process articulated in *Wolff,* but to judicial review of the sufficiency of the evidence to warrant the findings of the disciplinary board as well. Accord *Smith* v. *Rabalais,* 659 F.2d 539, 545 (5th Cir. 1981), cert.

denied, 455 U.S. 992 (1982); *Wilwording* v. *Swenson,* 502 F.2d 844, 851 (8th Cir. 1974), cert. denied, 420 U.S. 912 (1975). Independent review is necessary to protect inmates against decisions affecting their liberty interests which may be made by prison officials in good faith, but nevertheless without legally adequate evidence to support them. Such review does not involve a de novo evidentiary hearing before a judge nor does it involve judicial second guessing with respect to the credibility of witnesses or the adoption of inferences. Judicial review is to be limited to the legal sufficiency of the evidence to support the disciplinary board's findings.

The defendant predicts substantial cost increases to the Department of Correction flowing from the necessity to keep meticulous records, and to the courts as well, if we rule that judicial review of disciplinary board findings leading to the deprivation of good time credits is constitutionally required. We are not persuaded that the Department's record keeping costs will increase as a result of our recognizing inmates' rights to judicial review. Written records of disciplinary board proceedings are constitutionally required in any event. *Wolff* v. *McDonnell, supra* at 563-567. Undoubtedly, implementation of a right to judicial review will involve costs to the courts, and perhaps to the Department of Correction, but that consideration cannot justify a failure to ensure fundamental fairness in disciplinary proceedings.

Contrary to the defendant's argument, the availability of judicial review will not undercut the correctional goal of swift and sure punishment for misconduct in the prison setting. The forfeiture of good time credits does not ordinarily result in swift punishment because its impact is not felt by the inmate until, but for the forfeiture, his period of incarceration would be at an end.

The defendant presents two further arguments, the first being that since the Department of Correction is not subject to § 14 of the State Administrative Procedure Act, G. L. c. 30A, providing for judicial review of the decisions of administrative agencies, see G. L. c. 30A, §§ 1 & 1A, the Legislature's intent that there be no judicial review in the circumstances of this case is clear. We do not consider the exclusion of the

Department of Correction from G. L. c. 30A, § 14, as indicating a legislative intent that inmates shall not be entitled to judicial review of the sufficiency of the evidence to warrant the findings of a disciplinary board resulting in the loss of good time credits, particularly in view of our conclusion that inmates have a constitutional right to such review.

The defendant's final argument with respect to the availability of judicial review is that prison cases should get no greater judicial review than do military cases and, the defendant says, military cases do not receive judicial review of the sufficiency of the evidence to warrant court-martial findings. We will assume, in the defendant's favor, that judicial review is not available to determine the sufficiency of the evidence relied on by a military tribunal as the basis for its findings. The fact that Federal or State court review is unavailable in the military context, however, is not persuasive. No contention has been made that adequate review is not available within the system of military courts created by Congress.

The trial judge reviewed the evidence to determine whether there was some evidence which, if believed, would rationally permit the board's findings.[5] He concluded that such evidence had not been produced. We agree. The evidence, viewed as favorably to the defendant as logic will permit, demonstrates only that the plaintiffs, in the company of a third undisclosed inmate, were the only inmates seen by the guard in the fenced area with the inmate who had been beaten, and that they fled the scene when the guard appeared. Of course, evidence of consciousness of guilt, together with other sufficiently proba-

---

[5] An alternative standard of review would be whether the board's findings were supported by "substantial evidence." Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion," taking "into account whatever in the record fairly detracts from its weight." *New Boston Garden Corp.* v. *Assessors of Boston,* 383 Mass. 456, 466 (1981), quoting *Boston Edison Co.* v. *Selectmen of Concord,* 355 Mass. 79, 92 (1968), and *Cohen* v. *Board of Registration in Pharmacy,* 350 Mass. 246, 253 (1966). In view of our conclusion that the trial judge rightly decided that the board's findings failed to meet the more lenient "some evidence" test, we need not decide whether that test or a stricter test is more appropriate.

tive evidence, may warrant a finding of guilt. *Commonwealth v. Montecalvo,* 367 Mass. 46, 55 (1975). However, even if the plaintiffs' flight could be considered as demonstrating more than the plaintiffs' reluctance either to inform on another inmate or be falsely accused of assault, one cannot fairly infer from the evidence before the board that more than one person struck the injured inmate, or that either plaintiff struck him or otherwise participated in the assault. We conclude that the judge was correct in reviewing the sufficiency of the evidence to support the disciplinary board's findings, and that he correctly ruled that the evidence was insufficient.

*Judgments affirmed.*