JOSEPH JORDAN vs. SUPERINTENDENT, MASSACHUSETTS
CORRECTIONAL INSTITUTION, CEDAR JUNCTION.

No. 99-P-1582.

Norfolk. October 15, 2001. - January 15, 2002.

Present: BROWN, CYPHER, & KAFKER, JJ.

*Imprisonment,* Enforcement of discipline.

A prison disciplinary board's decision finding an inmate guilty of possession
of a weapon (a piece of flat stock unsharpened metal) was vacated, where
there was insufficient evidence of the inmate's knowledge of, and control
over, the piece of metal, which had been concealed in a newspaper and
slipped through the slot in the door of the inmate's cell, to discipline him
for possession of contraband. [587-590]

CIVIL ACTION commenced in the Superior Court Department on
June 22, 1998.

The case was heard by *Charles M. Grabau,* J., on a motion
for summary judgment.

The case was submitted on briefs.

*Joseph Jordan,* pro se.

*Nancy Ankers White,* Special Assistant Attorney General, *&*
*Thomas E. Abruzzese* for the defendant.

KAFKER, J. As he was being confronted in a hallway by a cor-
rection officer who had previously reported him for possessing a
weapon, an inmate slipped a newspaper through the slot in the
door of the cell occupied by another inmate, the plaintiff, Joseph
Jordan. The officer immediately opened the cell and discovered
an eight and one-half inch piece of flat stock unsharpened metal
concealed within the newspaper.[1] After a disciplinary hearing
the plaintiff was found guilty on two charges relating to the
piece of metal, which was admittedly contraband. Following an

---

[1]How the plaintiff received the newspaper is, as explained below, unclear.

unsuccessful appeal to the superintendent, the plaintiff brought this complaint in the Superior Court challenging the sufficiency of the evidence supporting the guilty findings. The trial judge allowed the superintendent's motion for summary judgment. In these circumstances, where the hearing officer for the prison could not himself decide whether the plaintiff even had knowledge of the contraband, we reverse.

I. *Facts.* The facts as they were presented and resolved at the disciplinary hearing were as follows: On March 18, 1998, the plaintiff was housed in cell 105 of the "Modular Unit" at M.C.I., Cedar Junction, on "Awaiting Action Protective Custody Status." Inmate Steven Balsavich, also incarcerated at M.C.I., Cedar Junction, was acting as an inmate runner for the Modular Unit. An inmate runner has the responsibility of basic cleaning tasks, as well as passing reading materials among the confined inmates. Officer William Shugrue happened to visit the Modular Unit that day, and upon entering the area, he noticed Balsavich kneeling on a folded newspaper and speaking to an inmate in cell 101. After noticing Officer Shugrue's entrance, Balsavich stood up with newspaper in hand, and began walking away from cell 101. Officer Shugrue, who had written a disciplinary report on Balsavich for possession of a weapon prior to this incident, summoned Balsavich to come and speak with him. Before complying with Officer Shugrue's request, Balsavich passed in front of cell 105, occupied by the plaintiff, and deposited the newspaper through a slot in the door apparently intended for food trays. According to Shugrue's report, he saw Balsavich "hand" the plaintiff a folded newspaper which the plaintiff placed on the floor. By contrast, in the hearing officer's "Statement of Evidence Relied Upon to Support Findings," Officer Shugrue is only reported to have clearly observed the plaintiff "receive" this item from another inmate.[2]

After seeing Balsavich pass the newspaper through the slot, Officer Shugrue immediately opened the plaintiff's cell and

---

[2]The trial judge notes that "there is a conflicting view on the manner the newspaper entered into the possession of the plaintiff. The testimony of Officer Shugrue at the hearing states that Balsavich 'handed' the newspaper to plaintiff. The D-report states that Balsavich placed the newspaper on the floor of the plaintiff's cell."

picked the newspaper up off the floor. Upon inspection, Officer Shugrue found within the folds of the newspaper an eight and one-half inch piece of flat stock unsharpened metal. The plaintiff denied any knowledge of, or intent to possess, the contraband. Further, Balsavich, in an affidavit, admitted his knowledge of the contraband and made exculpatory statements concerning the plaintiff.

Later that day, Officer Shugrue filed a disciplinary report accusing the plaintiff of violating 103 Code Mass. Regs. § 430.24(2), (15), and (33) (1993).[3] This report designated the offenses as "Major."[4] A disciplinary hearing was held on April 7, 1998, at which the evidence submitted consisted of Officer Shugrue's testimony, his typed disciplinary report, the affidavit of inmate Balsavich, and the plaintiff's testimony.

The hearing officer found the plaintiff guilty of weapon possession, 103 Code Mass. Regs. § 430.24(15), and the attempt provision in 103 Code Mass. Regs. § 430.24(33). The violation considered under 103 Code Mass. Regs. § 430.24(2) was dismissed as being duplicative. The decision was "predicated on the written report of Officer Shugrue coupled with his oral summation." The hearing officer found: "The inmate, of his own volition, had in his possession an 8½ inch weapon. Though irrespective of intent, it has been irrefutably established that this individual accepted this weapon (albeit concealed within a newspaper) from another inmate . . . . Though it cannot be independently established that this individual had personal knowledge of the weapon in question; nevertheless Officer

---

[3]The disciplinary offenses that the plaintiff was charged with under 103 Code Mass. Regs. § 430.24 were: "(2) Violating any departmental rule or regulation, or any other rule, regulation, or condition of an institution or community based program"; "(15) Possession, manufacture, or introduction of a gun, firearm, explosive, ammunition, weapon, sharpened instrument, knife or tool"; and "(33) Attempting to commit any of the above offenses, making plans to commit any of the above offenses or aiding another person to commit any of the above offenses shall be considered the same as the commission of the offense itself."

[4]According to 103 Code Mass. Regs. § 430.09(4) (1993): "In designating the offense as a minor or major matter, the disciplinary officer may consider the following factors: (a) Threat to institutional security; (b) Repetitiveness; (c) Extent of harm done; and (d) Mitigating circumstances." The proceedings in a "Major" matter are held pursuant to 103 Mass. Code Regs. § 430.11 (1993).

Shugrue reports that he clearly observed Inmate Jordan receive this item from another inmate." Furthermore, the affidavit submitted by Balsavich "was given its just review" but was deemed to be without "any . . . substantive merit." As a result of the guilty determination, the plaintiff's television, radio, canteen, and telephone privileges were suspended for six weeks.[5]

The plaintiff appealed the hearing officer's guilty findings to the Superintendent of M.C.I., Cedar Junction, who denied the appeal. The plaintiff filed a complaint in the Superior Court challenging the guilty findings of his disciplinary hearing. The defendant's summary judgment motion was allowed by the trial judge without a hearing. Mass.R.Civ.P. 56(b), 365 Mass. 824 (1974).

II. *Discussion.* The plaintiff, appearing pro se, brings this action in the nature of certiorari pursuant to G. L. c. 249, § 4, and 42 U.S.C. § 1983 (Supp. 1999).[6] See *Hill* v. *Superintendent, Mass. Correctional Inst., Walpole,* 392 Mass. 198, 199 n.2 (1984), reversed on other grounds, 472 U.S. 445 (1985); *Wightman* v. *Superintendent, Mass. Correctional Inst., Walpole,* 19 Mass. App. Ct. 442, 444 (1985). "Where inmates challenge the sufficiency of the evidence to justify a disciplinary board's decision, we apply the substantial evidence test . . . ." *Murphy* v. *Superintendent, Mass. Correctional Inst., Cedar Junction,* 396 Mass. 830, 833 (1986). *Puleio* v. *Commissioner of Correction,* 52 Mass. App. Ct. 302, 305 (2001). See *Mayor of Revere* v. *Civil Service Commission,* 31 Mass. App. Ct. 315, 321-322 (1991). Substantial evidence is evidence that " 'a reasonable mind might accept as adequate to support a conclusion,' . . . taking into account whatever in the record fairly detracts from the weight of the evidence." *Cepulonis* v. *Commissioner of Correction,* 15 Mass. App. Ct. 292, 296 (1983), quoting from *Trustees of Forbes Library* v. *Labor Relations Commn.,* 384

---

[5]Ancillary implications of this guilty finding referenced by the plaintiff include the possibility that his parole eligibility status could be affected, and restrictions could be placed on work opportunities within the facility.

[6]While 42 U.S.C. § 1983, is mentioned, the plaintiff fails to develop any argument whatsoever under this statute; therefore, pursuant to Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), this claim has been effectively waived. See *Baird* v. *Massachusetts Bay Transp. Authy.,* 32 Mass. App. Ct. 495, 499 (1992).

Mass. 559, 568-569 (1981). It is also the "board's exclusive function to weigh the credibility of the witnesses and to resolve factual disputes between [the inmate's] testimony and that of the correction officer[]." *Id* at 295.

The *Cepulonis* case presents an instructive application of the methodology for reviewing the sufficiency of evidence justifying a disciplinary board's decision regarding possession of contraband in prison. In that case, two correction officers were conducting a routine check of an inmate's room when they came across screwdrivers, wire cutters, pipe sections, and other contraband. *Id.* at 293-294. The prison disciplinary board found Cepulonis guilty of possessing escape equipment. *Id.* at 292. On appeal, he argued that there was insufficient evidence to support the conclusion that certain items were actually escape equipment, or to show that he possessed the items that were found hidden in a window frame. *Id.* at 294. In that case, this court found it appropriate for the prison disciplinary board to "look at the entire situation, in the context of the prison environment, to decide whether materials were being amassed which might aid an escape." *Id.* at 294. The court held that "the board could infer, based on the nature and probable use of the items seized, . . . [the inmate's] admission to possession of the other contraband discovered, and the length of time he had occupied the room, that [the inmate] knew of, and had control over, the [contraband items]." *Ibid.* See *Puleio* v. *Commissioner of Correction*, 52 Mass. App. Ct. at 305-306 (in case in which inmate claimed he could not be found guilty because he did not knowingly possess solder or intend to evade prison rules, knowledge and intent were inferred from evidence that solder was in the inmate's jacket, and inmate admitted that he had probably brought tool with him from another correctional institution). Compare *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. 563, 567 (1980).

In this case, unlike *Cepulonis*, the surrounding facts and the inferences that can be drawn from them regarding knowledge of, and control over the contraband are murky at best, given (1) the concealment of the metal in the newspaper, (2) the deposit of the newspaper into the cell by an inmate runner, whose responsibilities included delivering the mail, (3) the lack of

clarity in the hearing officer's findings concerning whether the plaintiff ever handled the newspaper, (4) Shugrue's immediate entry into the cell and removal of the metal, and (5) Balsavich's own reasons for disposing of the weapon quickly and surreptitiously to avoid discipline.

We are mindful that where "the testimony before the board could lead to different inferences, '[a] court may not displace . . . [the] board's choice between two fairly conflicting views . . . .' " *Cepulonis*, 15 Mass. App. Ct. at 295, quoting from *Labor Relations Commn.* v. *University Hosp., Inc.*, 359 Mass. 516, 521 (1971). If the hearing officer, based on his own credibility determinations and review of "the entire situation [] in the context of the prison environment" found that the plaintiff had knowledge of, and control over the weapon, this court would be bound to show great deference to that decision. *Cepulonis, supra* at 294-295. Contrast *Wightman* v. *Superintendent, Mass. Correctional Inst., Walpole*, 19 Mass. App. Ct. at 446-447 (uninformed belief that inmate possessed "Angel Dust" was insufficient to affirm summary judgment in favor of Department of Correction).

Here, however, the hearing officer made no such finding. He purported to find that the plaintiff chose, apparently by accepting or at least receiving the newspaper from the runner, to have the weapon in his "possession." He was not, however, prepared to conclude that the plaintiff intended to receive the piece of metal or even that he knew he had received it. Furthermore, the hearing officer did not decide how the plaintiff received the newspaper, i.e., was it put in his hand or just dropped through the slot. The plaintiff's handling of the newspaper, if it had been found to occur, might have supported a finding of greater interaction with the other inmate and perhaps knowledge or at least suspicion based on the weight of the object. This omission is of some significance.

In sum, we conclude that there was not sufficient evidence of the plaintiff's knowledge of, and control over, the piece of metal to discipline him for possession of contraband. Where the evidence is so limited and problematic that the prison officials themselves could not, even based on their knowledge of the inmates and the institution and the attendant facts and

circumstances, find that the plaintiff had knowledge of the weapon, we do not defer to the prison officials' decision to discipline the plaintiff for possession of contraband.

The judgment in favor of the defendant is vacated. Within thirty days of the issuance of the rescript, the defendant will inform the judge of the Superior Court whether he proposes to reinstitute a hearing before a disciplinary board to offer additional proof. *Wightman* v. *Superintendent, Mass. Correctional Inst., Walpole,* 19 Mass. App. Ct. at 447. If not, the plaintiff may move for relief, including expungement of the disciplinary report, the hearing officer's decision, and all references thereto.

*So ordered.*